UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ROY TODD BROOKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:09-CV-432 |
| ) | (PHILLIPS/GUYTON) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment [Doc. 14] and the Defendant's Motion for Summary Judgment [Doc. 16]. Plaintiff Roy Todd Brooks ("Plaintiff") seeks judicial review of the decision by Administrative Law Judge ("ALJ") Joan A. Lawrence to deny him benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On October 10, 2006, the Plaintiff filed applications for supplemental security income ("SSI"). [Tr. 91-93]. On the application, the Plaintiff alleged a period of disability which began on March 10, 2003. [Tr. 91]. After her application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On February 17, 2009, a hearing was held before the ALJ to review the determination of the Plaintiff's claim. [Tr. 54-63]. On March 30, 2009, the

-1-

ALJ found that the Plaintiff was not under a disability from October 10, 2006, through the date of the decision. [Tr. 54-63]. On January 15, 2010, the Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 1-3]. The Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g).

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since October 10, 2006, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).

2. The claimant has the following severe impairments: morbid obesity; left knee degenerative joint disease; mild lumbar spine degenerative disc disease; borderline intellectual functioning (provisional); bipolar disorder vs. mood disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant should avoid hazards, extreme cold and humidity. He has limited reading and writing ability. He has mild or limited but satisfactory ability to: respond appropriately to changes in the work setting, accept instructions and criticisms appropriately, and set realistic goals. He is limited to simple work only with limited contact with the public.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on May 16, 1963 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in

English (20 CFR 404.1564).

    8.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. (20 CFR 416.968).

    9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 416.968).

    10.    The claimant has not been under a disability, as defined in the Social Security Act, since October 10, 2006, the date the application was filed (20 CFR 416.920(g)).

[Tr. 56-62].

## II. DISABILITY ELIGIBILITY

An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

Plaintiff bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of

Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, the Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. ANALYSIS

The Plaintiff presents four arguments on appeal. The Plaintiff asserts that the ALJ: (1) erred when determining his mental Residual Functional Capacity ("RFC"); (2) incorrectly determined that he was capable of performing light work; (3) committed error when failing to address his impairments of diabetes and carpal tunnel syndrome; and (4) erred by failing to fully develop the record and order the appropriate medical testing. [Doc. 15 at 17-20].

### A. The ALJ Determination of the Plaintiff's Mental RFC

On appeal, the Plaintiff argues that ALJ Lawrence erred when determining that the claimant would only experience moderate difficulties in social functioning. [Doc. 15 at 17]. The Plaintiff contends that the psychological evaluation of Carrie Booher, Ph.D., indicates mental limitations more severe than found by the ALJ. [Doc. 15 at 17]. Specifically, the Plaintiff asserts that the ALJ

(1) improperly stated that the instances of inappropriate behavior were limited to his interactions with Dr. Booher and (2) incorrectly opined that the Plaintiff could finish what he started. [Tr. 15 at 18].

The Commissioner responds that substantial evidence supports the ALJ's determinations regarding the Plaintiff's mental impairments. [Doc. 17 at 13]. The Commissioner argues that the Plaintiff relies too heavily on Dr. Booher's report and unfairly characterizes the ALJ's reasoning by misconstruing the record. [Doc. 17 at 11].

The Court agrees with the Commissioner and finds that the ALJ's consideration of Dr. Booher's opinion was not inconsistent with the record. In deciding how much weight to give opinions in the record, an ALJ is required to consider them in light of the same factors used to determine whether treating physicians' opinions will be given controlling weight. See 20 C.F.R. § 416.927(d)(2)-(6). In this case, it is clear that the ALJ expressly stated the weight he gave Dr. Booher's opinion and provided a reason, specifically the inconsistency with the record, justifying that weight. The inconsistency of an opinion with the record as a whole is specifically enumerated in the regulations as a reason for determining that the opinion is entitled to reduced weight. 20 C.F.R. § 416.1527(d)(4).

This Court agrees with the position of the Commissioner, and finds that substantial evidence in the record supports the ALJ's determinations regarding the Plaintiff's mental impairments. The ALJ noted that Dr. Booher conducted a consultative psychological examination of the Plaintiff in January 2007, during which time he used curse words, leading Dr. Booher to opine that such language would result in the Plaintiff having difficulties sustaining appropriate and effective interactions. [Tr. 57, 561]. The record indicates that before Dr. Booher's evaluation, the Plaintiff

was irritable in the reception area, particularly when responding to questions from his mother when filling out his office paperwork. [Tr. 559]. In the same report, however, the Plaintiff "denied a diminished ability to concentrate" and that most days, he felt "pretty good" emotionally. [Tr. 560]. In addition, Dr. Booher indicated in her report that she relied significantly on the claimant's self-reported symptoms in forming her opinion, which the ALJ did not find "entirely credible." [Tr. 61].

Moreover, the ALJ properly evaluated Dr. Booher's concerns when assessing the Plaintiff's mental limitations. While the ALJ found Dr. Wright's opinion more consistent with the record than Dr. Booher's evaluation, the ALJ did acknowledge that the Plaintiff has a mild or limited ability to accept instructions and criticism. [Tr. 58]. As a result, the ALJ limited the Plaintiff to simple work that involved only limited contact with the public. [Tr. 58]. This Court finds that the ALJ properly accounted for Dr. Booher's evaluation to the extent that her findings were supported by the record as a whole.

The ALJ stated that he did not fully rely on Dr. Booher's report when neither Dr. Lashley, who performed a consultative examination in March 2006, nor any of the Plaintiff's other medical providers indicated that the Plaintiff conducted himself inappropriately during office visits. [Tr. 57]. In addition, the ALJ stated that the Plaintiff behaved appropriately and did not use inappropriate language during the hearing. [Tr. 57]. For example, the Plaintiff misinterprets the record with regard to a Cherokee Health Systems ("CHS") report. The Plaintiff cites to a CHS evaluation performed by Lisa Oglesby, PT, Ph.D.,where his mother reported to Dr. Oglesby that "although on Seroquel, the [Plaintiff] was hateful, short-tempered, and yelling and screaming." [Doc. 15 at 18]. The record establishes that this statement is not contained in the CHS report. [Tr. 621]. The report states that the Plaintiff is "[D]escribed as being hateful, short-tempered, yelling and screaming *when*

*not on Seroquel*." [Tr. 621] (emphasis added). Further, the report indicates that the Plaintiff and his mother agreed that his behavior and mood were stable on his current treatment regime of taking Seroquel at night. [Tr. 621]. Thus, the report from CHS suggests that the Plaintiff responded positively to his medication and only exhibited inappropriate behavior in front of his mother when not following his medical treatment plan. In addition, two subsequent reports from CHS also reported that Seroquel was an effective treatment in controlling the Plaintiff's mental health problems. [Tr. 624, 625].

Moreover, the record supports the ALJ's observation that the Plaintiff could finish "what he started." [Tr. 57]. The ALJ provided examples as the basis for her conclusion, which included the Plaintiff's ability to perform "chores, reading, and watching a movie," and that "his ability to follow spoken instructions was 'pretty good,' and that his ability to handle changes in routine was 'pretty good.'" [Tr. 57-58]. In addition, the Plaintiff reported that he was able to drive a car alone and shop in stores. [Tr. 108]. The Plaintiff testified that he usually takes his mother to see her father at the nursing home, which is "about 15 miles" away. [Tr. 17]. Further, the Plaintiff testified before the ALJ that he "get[s] up in the morning, and [he] feeds the cow and give[s] it water, and the dogs . . . the doctors told me to walk . . . I've been doing that too." [Tr. 16].

The Court finds that the ALJ properly considered Dr. Booher's conclusions in her narrative decision, along with the other medical evidence of record when determining the Plaintiff's mental RFC. Accordingly, the Court concludes that the ALJ's mental RFC finding is supported by substantial evidence in the record.

## B. The ALJ's Finding that the Plaintiff Can Perform Light Work

The Plaintiff argues that there is not substantial evidence in the record to support the ALJ's finding that he could perform a full range of light work [Doc. 15 at 18]. Specifically, the Plaintiff contends that Dr. Lashley's opinion suggested that the Plaintiff could not perform a full range of "sedentary work."[1] [Tr. 19]. Further, the Plaintiff contends that the ALJ improperly credited the two state non-examining physician opinions of Robert T. Doster, M.D. and Robin W. Richard, M.D., over the examining physician opinion of Dr. Lashley. [Tr. 19-20]. The Commissioner asserts that substantial evidence supports the ALJ's finding that the Plaintiff could perform a limited range of light work. [Doc. 17 at 13]. The Commissioner argues that this finding was consistent with the opinions rendered by Robert T. Doster, M.D. and Dr. Richard. [Doc. 17 at 14].

In the present case, the ALJ identified that when Dr. Lashley consultatively examined the Plaintiff in March 2006. Dr. Lashley, an orthopedist, ordered x-rays of the Plaintiff's left knee and lumbar spine. The Plaintiff's left knee x-rays indicated signs of degenerative joint disease and the lumbar spine x-rays showed "only mild decreased disc space at L5-S1 with questionable decreased foraminal narrowing at the L5-S1 neuroforamen." [Tr. 59; 521]. Dr. Lashley assessed the Plaintiff with: (1) "lumbar back pain and what appears to be a degenerative disc disease, as well as spondylosis of the L-spine, specifically the L5-S1 level" and (2) "Left knee osteoarthritis." [Tr. 521]. Dr. Lashley opined that the Plaintiff had no limitations in terms of all range of motion tested. [Tr. 523-24]. After examining the Plaintiff, however, Dr. Lashley found that the Plaintiff was limited

---

[1] The Court notes that the ALJ found the Plaintiff had the residual functional capacity to perform light work, with the limitations of avoiding "hazards, extreme cold and humidity." [Tr. 58]. The ALJ, throughout her opinion, does not opine that the Plaintiff was capable of performing a full range of "sedentary work," as he incorrectly asserts in his brief. [Doc. 15 at 19].

to standing or walking for up to two hours in an eight-hour workday. In addition, Dr. Lashley reported that the Plaintiff must alternate sitting and standing. [Tr. 526].

The ALJ gave Dr. Lashley's opinion lesser weight, "as it is overly restrictive in light of the modest findings, including during his own examination of the claimant." [Tr. 60]. The ALJ placed more weight on the state agency reviewing physicians, Dr. Doster and Dr. Richards, stating that there opinions were "generally consistent with the overal evidence of record, including examination findings, diagnoses, treatment and prescribed medication." [Tr. 60].

Pursuant to federal regulation, the ALJ must "[g]enerally . . . give more weight to the opinion of a source who has examined [the Plaintiff] than to the opinion of a source who has not examined" the Plaintiff. 20 C.F.R. § 404.1527(d)(1). For that reason, "[i]n the hierarchy of opinions, the opinion of a non-examining physician is entitled to the least weight." Grecol v. Halter, 46 F. App'x. 773, 775 (6th Cir. 2002). However, the ALJ must still consider the opinions of non-examining physicians. 20 C.F.R. § 404.1527(d) ("Regardless of its source we will evaluate every medical opinion we receive."). Additionally, under appropriate circumstances, the regulations permit the ALJ to give "great, even dispositive, weight to a [non-examining physician's] opinion." Matelski v. Comm'r of Soc. Sec., 149 F.3d 1183, 1998 WL 381361 at *5 (6th Cir. 1998).

When according weight between the opinions of two non-treating physicians, federal regulation instructs the ALJ to consider, in addition to the examining relationship, the factors outlined in 20 C.F.R. § 404.1527 (d)(3)-(6). 20 C.F.R. § 404.1527(d).[2] The ALJ's ultimate

---

[2] 20 C.F.R. § 404.1527(d)(3) describes supportability, the extent to which "a medical source presents relevant evidence to support an opinion," as one factor relevant to the weight an opinion is due, noting that "because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." Under 20 C.F.R. § 404.1527(d)(4),

determination when assigning weight to the medical opinion, or decision to rely on one opinion to the exclusion of another, must be supported by substantial evidence. See Vance v. Comm'r of Soc. Sec., 260 F. App'x. 801, 806 (6th Cir. 2008) (affirming the ALJ's decision credit the opinion of an examining physician over the opinions of treating and non-examining physicians as supported by substantial evidence).

An ALJ may accept the opinion of a reviewing physician over that of an examining physician where the reviewing physician "had access to the entire medical record in the case," and the examining physician based his opinion on a single, personal observation of the claimant. Barker v. Shalala, 40 F.3d 789 (6th Cir. 1994). In Barker, the ALJ credited the evaluation of a medical expert who testified at the hearing over the examining psychologist. Id. at 794. The medical expert testified regarding the examining physician's opinion, and then explained the reasons why his opinion differed based upon evidence in the record. Id. In such a situation, the Sixth Circuit found that the non-examining physician's opinion may only be accepted "when the non-examining physician clearly states the reasons that his opinions differ from those of the examining physicians." Id. at 794.

In this case, Dr. Lashley specialized in the area of orthopedics and his opinion was not considered in the two non-examining source opinions that the ALJ credited. See 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Dr.

---

consistency with the record as a whole is an important consideration, as is specialization of the source under 20 C.F.R. § 404.1527(d)(5). 20 C.F.R. § 404.1527(d)(6) renders relevant "other factors" including "the extent to which an acceptable medical source is familiar with the other information in your case record" at the time they rendered an opinion.

Lashley supported his opinion with objective tests, such as the x-rays performed on both the Plaintiff's knee and spine. Dr. Doster indicated, however, that there were "no imaging studies in the file" on which he based his opinion. [Tr. 574]. Similarly, Dr. Richard does not indicate that she reviewed the Plaintiff's imaging studies during her review of the Plaintiff's medical record. [Tr. 600]. Moreover, Dr. Doster indicated that his review of the Plaintiff's medical record did not include an examining source statement, such as Dr. Lashley's opinion. [Tr. 573]. While Dr. Richard noted that her review of the record included a statement from a treating or examining source, there is no mention of Dr. Lashley's opinion. [Tr. at 599-600]. If Dr. Richard reviewed Dr. Lashley's opinion, he fails to offer an explanation as to reason she arrived at a different outcome than that of the examining source's opinion. [Tr. 600]. Therefore, substantial evidence does not support a finding that either evaluation of Dr. Doster or Dr. Richards were consistent with the record as a whole because the opined limitations of an examining source were not considered.

Accordingly, the decision of the Commissioner to discount the opinion of Dr. Lashley, an examining source, and rely on the conclusions of Drs. Doster and Richard, two non-examining sources, does not constitute substantial evidence sufficient to support the ALJ's determination of the Plaintiff's RFC.

### C. ALJ Failed to Address the Plaintiff's Diabetes and Carpal Tunnel Syndrome

The Plaintiff argues that the ALJ committed error in failing to address impairments related to the his diabetes and carpal tunnel syndrome. [Doc. 15 at 20]. Specifically, the Plaintiff contends that the ALJ did not address his long-standing history of carpal tunnel syndrome or reference how

diabetes impacted his feet burning.³ [Doc. 15 at 20].

The Commissioner considers at step two whether a claimant has an impairment or combination of impairments that is severe and that meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is an impairment or combination of impairments that "significantly limit a claimant's physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). On the other hand, the ALJ must move on to the subsequent steps in the analysis if he finds at least one impairment to be severe. The Court of Appeals for the Sixth Circuit has held that an ALJ's failure to find additional impairments at step two does not result in reversible error when the "ALJ considers all of a claimant's impairments in the remaining steps of the disability determination." Fisk v. Astrue, 253 Fed. App'x 580, 583 (6th Cir. 2007)." In Maziarz v. Sec'y of Health & Human Servs., the agency found the claimant suffered from severe impairments, but did not find his cervical condition severe. 837 F.2d 240, 244 (6th Cir. 1987). The court found significant that the agency "continued with the remaining steps in the disability determination." Id. In holding that any error at step two was harmless, the court concluded that "the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity." Id.

In this case, the ALJ determined that the Plaintiff suffered from a number of severe impairments, but did not find the Plaintiff's remaining conditions severe. The ALJ considered the

---

³The Court notes that the Plaintiff limited his argument to four sentences. While the Court will address this argument, it is important for the Plaintiff to consider the Sixth Circuit case, El-Moussa v. Holder, holding that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." 569 F.3d 250, 257 (6th Cir. 2009).

Plaintiff's "limitations and restrictions," including his non-severe impairments, in the remaining steps of the analysis. SSR 96-8p. Specifically, when assessing the Plaintiff's residual functional capacity, the ALJ acknowledged the Plaintiff's diabetes, stating that "the [Plaintiff] also indicated that his eyesight had diminished due to diabetes." [Tr. 59]. Additionally, the ALJ referenced for the Plaintiff's complaint of "numbness in his hands twice a day." [Tr. 59]. When assessing the objective medical evidence, the ALJ considered Dr. Lashley's report that the Plaintiff "had full range of motion universally in other joints, full muscle strength in all muscle groups; and he appeared to have intact and normal sensation in all areas." [Tr. 60]. Additionally, the ALJ noted that when the Plaintiff's primary care provider examined him in July 2007, the Plaintiff had "full muscle strength in all extremities." [Tr. 60].

The Court finds that the ALJ's failure to list the Plaintiff's diabetes and carpal tunnel syndrome as severe impairments does not result in reversible error. Since the ALJ considered the Plaintiff's diabetes and carpal tunnel syndrome when considering the Plaintiff's residual functional capacity, the Court finds it "unnecessary to decide whether the ALJ erred in classifying the impairments as non-severe at step two." Fisk, 253 Fed. App'x at 583 (internal quotations and citations omitted).

**D. The ALJ's Failure to Develop the Record with Appropriate Medical Testing**

The Plaintiff argues that the ALJ has a duty to develop the record where evidence suggests that an impairment exists. [Doc. 15 at 20]. Specifically, the Plaintiff argues that the ALJ erred by failing to order IQ testing when his scholastic records and Dr. Booher's report supported a possibility that he qualified for benefits under Listing 12.05(c). [Doc. 15 at 21]. The Commissioner contends that there

is no requirement that a claimant receive IQ testing. [Doc. 17 at 14].[4] The Commission asserts that it is within the discretion of the ALJ to develop the record where the evidence suggest that an impairment exists, and the ALJ properly developed the record when he referred the Plaintiff to Dr. Booher. [Doc. 17 at 14].

First, the Plaintiff argues that the ALJ erred by failing to order an intelligence test for the Plaintiff. In essence, the Plaintiff believes that score of 70 or below, combined with the Plaintiff's scholastic record, would allow him to qualify for disability under Listing 12.05(c). Listing 12.05 states the following:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements A, B, C, or D are satisfied . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

For a claimant to succeed in claiming disability under 12.05C, he would need to demonstrate the existence of the following three elements: (1) a "significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22, (2) an IQ score of below 70, and (3) an additional limiting impairment. Foster v. Halter, 279, F.3d 348, 354 (6th Cir. 2001).

The Plaintiff correctly states the law that an ALJ has a duty to develop the record where the

---

[4]This Court notes the Defendant's argument that Dr. Booher ruled out mild mental retardation. A diagnosis of mild mental retardation is not possible without a claimant's IQ score or some testing or evaluation contemporaneous during the developmental period. See Foster, 279 F.3d at 354-55. Upon further review of evaluation, Dr. Booher indicated he was unable to diagnose mild mental retardation based on the information before him.

evidence suggests that a mental impairment exists. 20 C.F.R. § 416.927(c)(3). "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." Foster v. Halter, 279 F.3d 348, 355 (6th Cir. 2001).

In this case, the Plaintiff submitted a scholastic record that failed to indicate that he exhibited significantly subaverage intellectual functioning prior to age 22. The Plaintiff claims that he "struggled throughout his scholastic career, being retained in the first grade as an 'immature' student, averaging D's and F's, and scoring entirely in the single-digit percentiles on nationally standardized tests in the first grade." [Doc. 15 at 20], [Tr. 174]. Due to his academic performance, the Plaintiff requested twice that IQ testing be administered. The ALJ noted, however, that while the Plaintiff claims he is unable to read, he received a grade of "B" in English when he was fourteen.[5] [Tr. 173]. The ALJ also noted that the Plaintiff reported to Dr. Lashley that he completed high school, while telling Dr. Booher that he left high school during his junior year. [Tr. 519, 557]. In 1981, the Plaintiff received a "Certificate of Merit" from the Young Educational Developmental Center.[6] [Tr. 318]. Further, there is no evidence that the Plaintiff was placed in special education classes or placed in a program specifically for children with metal limitations. The Plaintiff also leaves a gap in the record from his first grade scholastic record to his scholastic records from ages fourteen to sixteen.

Accordingly, the Court finds that the Plaintiff's argument that his scholastic record required the ALJ to develop the record with IQ testing is not supported by substantial evidence.

---

[5]While the Plaintiff received grades of "D" in English when he was fifteen, it is noteworthy that his absences from school also increased during this time period. [Tr. 173].

[6]The ALJ found that the Plaintiff completed high school. The Court agrees with the Plaintiff that there is no indication in the record that he completed high school based on this certificate of merit. However, based on the Plaintiff's contradictory statements regarding his high school education, the Court finds this error harmless.

Additionally, the Plaintiff argues that Dr. Booher's report required the ALJ to order IQ testing. In this case, the Plaintiff alleged a mental impairment and the ALJ referred him to Dr. Booher for a consultative examination. [Tr. 556-64]. Based on Dr. Booher's report, the Plaintiff argues that the ALJ should have ordered IQ testing. On January 3, 2007, Dr. Booher's opined the Plaintiff with borderline intellectual functioning, after ruling out mild mental retardation. [Tr. 564]. Dr. Booher also rated the Plaintiff's current Global Assessment of Functioning ("GAF") as 54, with medication controlling his symptoms.[7] [Tr. 564]. On January 30, 2007, state agency reviewing psychologist, P. Jeffrey Wright, P.h.D., reviewed the Plaintiff's record and opined that the Plaintiff had moderate restrictions in activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties in concentration, persistence, and pace. [Tr. 585]. Dr. Wright also referenced Dr. Booher's examination and found the limitations she assessed were too restrictive and inconsistent with the Plaintiff's activities of daily living, as well as the objective findings from the consultative examination. [Tr. 587].

The ALJ discounted Dr. Booher's opinion stating that "Dr. Booher indicated that she relied significantly on the claimant's self-reported symptoms." [Tr. 61]. The ALJ noted that while Dr. Booher noted that the Plaintiff's use of curse words during the examination indicated that he lacked self-awareness, no other physician of record indicated that the Plaintiff behaved poorly during an examination, nor did he behave inappropriately or use inappropriate language at the hearing. [Tr. 57]. The ALJ credited the opinion of Dr. Wright finding that his overall assessment of the Plaintiff's

---

[7]A GAF score is given by a clinician when assessing an individual's overall level of functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) ("DSM-IV). A GAF score of 54 indicates that an individual experience "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

mental capabilities more consistent with the medical evidence.

The medical evidence indicates that in May 2007, the Plaintiff had an Intake meeting at CHS. [Tr. 621]. The report states that the Plaintiff and his mother agreed that his behavior and mood were stable and acceptable on Seroquel. [Tr. 621]. The report also noted that the Plaintiff's mood was cooperative, his affect was appropriate, and his thought content and processes were normal. [Tr. 622]. In July 2007, Febe Wallace, M.D., reported that the Plaintiff continued to be stable on Seroquel. [Tr. 624]. In August 2007, Dr. Wallace again reported that despite taking only one medication, Seroquel, that medication controlled the Plaintiff's depression and mania effectively for the past year. Moreover, Dr. Booher was the only physician of record who indicated that the Plaintiff was potentially functioning in the mild mental retardation range, and she made this judgment based primarily on the Plaintiff's subjective complaints, which the ALJ discounted.

Accordingly, substantial evidence supports the ALJ's decision to not order IQ testing in this case. The Court finds that, regardless of the results of the test, there was sufficient support to make the decision that the Plaintiff's claim of total disability fails.

.

## V. CONCLUSION

It is **RECOMMENDED** that this case be **REMANDED** to the Defendant Commissioner for further proceedings consistent with this Report and Recommendation. To that end, Plaintiff's Motion [Doc. 14] is **GRANTED** only for remanding the case as aforesaid. It is also **RECOMMENDED** that the defendant's Motion for Summary Judgment [Doc. 16] be **DENIED**.[8]

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[8]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).